# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ARCHIE HOLLAND-EL,       *

    Plaintiff       *

v.       *     Civil Action No. PWG-17-2193

MD PAROLE COMMISSION, *et al.*,     *

    Defendants       *

## MEMORANDUM OPINION

Plaintiff, a Maryland state inmate, filed suit on August 3, 2017, alleging various civil rights violations. ECF No. 1. On August 30, September 21, and September 27, 2017, the Court received letters from Plaintiff complaining of various problems he is experiencing while incarcerated. ECF Nos. 4, 10, 11. The Court issued an order instructing Defendants to show cause why injunctive relief should not be granted based on the contents of Plaintiff's letters. ECF Nos. 6, 14. Defendants have responded to the show cause order and Plaintiff has filed a reply. ECF Nos. 16, 20. Plaintiff has also requested appointment of counsel. ECF No. 26. For the reasons that follow, the Court will deny injunctive relief and deny Plaintiff's request for counsel.

## FACTS

In April 2017, Plaintiff was released on parole, conditioned on his entry into an in-patient drug treatment program. Compl. 3-4. Plaintiff states that he entered an in-patient treatment center on April 27 and was told on May 3 that he had "completed the detox phase of their drug treatment program and should enter an out-patient program." *Id.* at 4.[1] According to Plaintiff, the same day that he completed the detox phase, "parole agent Traci M. David

---

[1] The Court has modified the original capitalization when quoting from Plaintiff's filings.

submitted a false report" reflecting that Plaintiff had not satisfied the drug treatment program condition of his parole, which resulted in Plaintiff being placed in the Parole Violator Program (PVP) at Patuxent Institution. *Id.* Plaintiff filed this action against David, the Maryland Parole Commission, and others associated with the Parole Commission, seeking an order for his release from the PVP. *Id.* at 8-9. Plaintiff also seeks "$250,000.00 in compensatory and punitive damages for violating the ADA [Americans with Disabilities Act]," alleging that, because he is disabled, the Defendants "show[ed] discrimination toward a qualified disabled person" by placing him in the PVP. *Id.* at 7-9.

After filing the action, Plaintiff submitted letters to this Court chronicling the problems he was experiencing in the PVP. In his first letter, Plaintiff stated that Correctional Officer H. Bello threatened him by stating that "he would slap me in my mouth and force me to suck his penis." Aug. 30, 2017 Ltr. 1. Plaintiff implied that the threat was made in retaliation for filing this action. In his second letter, Plaintiff stated that he was

> told by correctional staff members as [he] returned to [his] unit "that if [he] continued to speak and ran [his] mouth [he] would be placed on segregation and [he] would be caused to [sic] be removed from the PVP Program and would be violated by the Maryland Parole Commission and forced to serve the remaining six years of [his] twenty five year sentence without parole.

Sept. 21, 2017 Ltr. 1 (second internal quotation mark missing in original). Further, he stated that correctional staff refused to supply him with administrative remedy complaint forms and that when he "appealed to several white shirt supervisors," he was "told 'this is Patuxent so deal with it' and if you continue to complain you can and will be placed at a location of this institution where we will not have to worry about your complaints, nor will you have access to any writing materials." *Id.* at 2. Finally, in Plaintiff's third letter, he stated that a correctional officer took Plaintiff's inmate identification card home with him, thereby subjecting Plaintiff to the risk that

2

he would be charged with and found guilty of violating an institutional rule requiring the possession and display of one's inmate identification card. Sept. 27, 2017 Ltr. Plaintiff included a copy of his administrative grievance about the identification card incident. ECF No. 11-1.

Following this Court's Orders to show cause why the Plaintiff should not be granted injunctive relief, the Defendants responded, asserting that the allegations contained in Plaintiff's three letters are false. Defs.' Resp. 2. As to Plaintiff's claim that Bello threatened him, Defendants stated that "Plaintiff recanted his allegations that CO Bello threatened him with physical violence and sexual assault as [a] result of filing this suit." *Id.* at 6. According to the affidavits of the litigation coordinator and warden, when they investigated Plaintiff's allegation against Bello, Plaintiff advised that he merely wanted Bello to leave him alone and informed a captain that "Bello did not say anything about slapping him or forcing him to suck his penis." Coccagna-Graham Decl. 1-2, ECF No. 16-1; *see also* Armstead Decl., ECF No. 16-2. Further, the litigation coordinator and warden's search for any administrative complaints filed by Plaintiff regarding Bello yielded no results. Coccagna-Graham Decl. 2; Armstead Decl. 2. Officer Bello submitted a written statement asserting that he did not recall threatening Plaintiff at any time and that he never had physical contact with Plaintiff. Coccagna-Graham Decl. 4 (exhibit).

As for Plaintiff's second letter, Defendants noted that Plaintiff's claim of threats of disciplinary segregation for "running his mouth" fail to identify specific officers or provide other evidence, and that Plaintiff has not, in fact, been subject to any discipline. Defs.' Resp. 7. Further, Defendants pointed out that Plaintiff's claim that he was not provided with administrative remedy forms is undercut by the fact that, shortly after sending the relevant letter, which was postmarked September 19, 2017, *see* ECF No. 10-1 (envelope), Plaintiff submitted an

administrative complaint about his identification badge, ECF No. 11-1 (submitted September 22, 2017). Defs.' Resp. 7-8.

With regard to the identification badge claim, Defendants included affidavits and notes from an investigation into his administrative grievance. Coccagna-Graham Decl. 2-3, 5, 8-9 (exhibits); Armstead Decl. 2. As determined in the course of the administrative investigation,

> Staff did have his ID due to inmate requesting to have his account activated. However inmate received his ID back the same date. When interviewed, inmate stated he was able to still move throughout the institution (hospital for meds, chow, ride the elevator due to medical restrictions) without ID however he was wrote [sic] a pass with the note of "no id" on his pass. Staff returned his ID back to him, inmate stated when he woke up his ID was back in his possession.
>
> ... There was no negative effect due to inmate not having his ID in his possession. Inmate was still able to move off the tier for his medication, and chow. Staff had his ID due to inmate requesting to have his inmate account activated, and his ID was returned to him.

Coccagna-Graham Decl. 9 (exhibit).

> Plaintiff filed a reply to Defendants' response to the show cause order, stating:
>
> Plaintiff did not at any time retract his statement about Officer H. Bello slapping him or forcing him to suck his penis.[2]
>
> Warden Armstead and Captain Parker ha[ve] documentation of the information report dated September 29, 2017 in Plaintiff's handwriting that will clearly show that Captain Parker has falsified her report [about her investigation into the claims against Bello].

Pl.'s Reply 1-2. Plaintiff's reply did not address Defendants' arguments regarding his non-specific claims that he was threatened with segregation and threats of discipline or that he suffered no adverse consequences from his inmate identification card being temporarily taken to activate Plaintiff's inmate account at his request.

---

[2] Plaintiff's first letter to the court stated that Bello *threatened* to do these things, Aug. 30, 2017 Ltr., not that he actually did so, as Plaintiff's reply seems to indicate.

4

Plaintiff moved for summary judgment, ECF No. 23, and then sent the Court a letter request that an attorney be assigned to represent him in this action, which I will construe as a Motion to Appoint Counsel. ECF No. 26. Plaintiff requests an attorney on the ground that he is "unable to have access to the law library at th[e] correctional facility." *Id.*

## DISCUSSION

**1. Injunctive Relief**

As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that then can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). "All four requirements must be satisfied." *Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (brackets omitted); *see also Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (noting that Fourth Circuit's prior test of balancing the factors is no longer good law in light of *Winter*). Plaintiff's request for injunctive relief shall be denied, as he does not clearly satisfy all four factors.

At the outset, the Court notes a fundamental problem with all of Plaintiff's claims for injunctive relief: they have no relation to the underlying complaint concerning Plaintiff's allegedly unlawful placement in the PVP. The requirement of making a clear showing of likely success on the merits actually concerns whether Plaintiff is likely to succeed at trial on his claims that he was unlawfully placed in the PVP and that the Defendants violated the ADA by returning him to jail—and Plaintiff certainly has not made such a showing to date. Indeed, attached to

Plaintiff's latest motion is a copy of the decision to revoke his parole, which provides that Plaintiff, by his own admission, violated his parole by using, possessing, or selling a controlled dangerous substance. ECF No. 23-4. Although Defendants charged him with failing to complete the mandated treatment program, ECF No. 23-3, Plaintiff's own filings indicate that his parole was not revoked, nor was he placed in the PVP because of leaving the treatment program. Moreover, as to his ADA claim, Plaintiff only alleges that he is disabled and that he was sent to the PVP. Compl. 4-7. He fails to allege that his disability was the reason for this adverse action, which is a required element of an ADA claim. *Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). The ADA does not provide a remedy for adverse actions that befall a disabled person where the actions are completely unrelated to the disability.

Thus, even if the claims in Plaintiff's letters are compelling, Plaintiff cannot demonstrate that he is likely to succeed on the merits of his underlying action. Nonetheless, giving Plaintiff the benefit of liberal construction, the Court will treat Plaintiff's letters, ECF Nos. 4, 10, and 11, as supplements to his complaint.

### a. Threats from Officer Bello

As to Plaintiff's claim that Officer Bello threatened to "slap [Plaintiff] in [his] mouth and force [Plaintiff] to suck his penis," Aug. 30, 2017 Ltr. 1, the parties have provided contradictory allegations. Although the litigation coordinator and the warden both aver that Plaintiff told another correctional officer that Plaintiff recanted his allegation against Bello, neither claims that she was ever directly informed by Plaintiff that he was recanting his allegations. Coccagna-Graham Decl. 2; Armstead Decl. 1-2. The officer who purportedly heard Plaintiff recant has not provided an affidavit. And, although Bello has submitted a statement that he does not *recall*

making such a threat to Plaintiff and that he has never touched Plaintiff, Bello's statement is not under oath nor is it necessarily inconsistent with Plaintiff's allegation. However, Plaintiff provides no independent evidence supporting his version of events; nor does he provide a sworn statement in support of his claim. Thus, Plaintiff has failed to make the requisite clear showing that he would likely succeed on the merits. Moreover, even assuming that Plaintiff's allegation is construed as an additional claim to the underlying complaint, Plaintiff has not demonstrated a likelihood of success on the merits as he does not dispute the Defendants' contention that he did not file an administrative grievance about this incident, Coccagna-Graham Decl. 2; Armstead Decl. 2, meaning that he failed to exhaust the claim before bringing the action as required under 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (exhaustion of administrative remedies is mandatory).

Further, as to *Winter*'s irreparable harm element, Plaintiff's only claim against Bello is that he made the verbal threat at issue in August 2017. Plaintiff does not claim that Bello has further threatened him, that he has acted on his threats, or that there is any ongoing or future irreparable harm that the threat caused which would be avoidable through a preliminary injunction. *See Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995) ("[N]ot all undesirable behavior by state actors is unconstitutional."). Thus, it is plain that Plaintiff cannot satisfy all of the *Winter* requirements.

**b. Retaliation**

Plaintiff also claims that unnamed officers threatened to place him in segregation if he continually complained to them. Sept. 21, 2017 Ltr. Plaintiff fails to identify the officers making the threats and, although at one point he implies that the officers are making these threats because he filed this case, Plaintiff has provided no evidence in support of this allegation. In

fact, Plaintiff fails to provide much context for the threats. For example, he states that he was told "that if [he] continued to speak and ran [his] mouth," *id.* at 1, he would face consequences, but it is unclear what speech the officers were addressing. Thus, while "[a] threat of physical harm to a prisoner if he persists in his pursuit of judicial relief is as impermissible as a more direct means of restricting the right of access to the courts," and it is not "necessary that the prisoner succumb entirely or even partially to the threat," as "[i]t is enough that the threat was intended to impose a limitation upon the prisoner's right of access to the court and was reasonably calculated to have that effect," *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978), Plaintiff's vague allegations are not enough to show that he is likely to succeed on the merits. Moreover, given that he only alleges threats, without action, and he has continued to file letters complaining of his treatment, he clearly has not been deterred from filing and consequently, he has not shown any likelihood of irreparable harm in the absence of injunctive relief. Accordingly, he is not entitled to a preliminary injunction.

### c. Administrative Remedy Forms

Plaintiff's reply does not challenge Defendants' assertion that he was not denied administrative remedy forms. Moreover, as previously noted, the fact that Plaintiff filed an administrative remedy form only a few days after complaining that he was denied access to such forms undercuts his claim. At the very least, it establishes that, even if Plaintiff had been denied these forms at some point in the past, that problem has since been cured, suggesting that there is no possibility of irreparable harm in the absence of preliminary injunctive relief. Thus, he cannot satisfy all of the *Winter* requirements as to this claim.

### d. ID Card

Finally, turning to Plaintiff's claim that he faced the risk of being written up for a rule violation after an officer took his inmate identification card, Plaintiff does not dispute Defendants' statement that the identification card was temporarily taken to activate Plaintiff's inmate account, that Plaintiff was given a pass during this time and suffered no adverse consequences, and that the identification card was in Plaintiff's possession when he awoke the next day. Coccagna-Graham Decl. 9. Accordingly, Plaintiff has failed to show that he faced or faces any harm from his temporary deprivation of the identification card, much less that he faces a risk of irreparable harm in the absence of an injunction.

Thus, for the reasons stated above, Plaintiff has not made the requisite showing for a preliminary injunction as to any of his claims.

## 2. Motion to Appoint Counsel

There is no absolute right to appointment of counsel under 28 U.S.C. § 1915(e)(1); an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987); *Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982); *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978).

The Court has carefully reviewed Plaintiff's complaint and finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. Plaintiff's claim that he was unfairly returned to custody on a parole violation is not unduly complicated. Therefore, the Court concludes that Plaintiff has not presented exceptional circumstances that would warrant the appointment of counsel.

Accordingly, the Court declines to order injunctive relief and denies without prejudice the Motion to Appoint Counsel. A separate Order follows.

12/1/17
Date

/s/
Paul W. Grimm
United States District Judge